IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| In Re<br><br>JAMES W. CATON<br><br>Debtor. | Chapter 7<br><br>Case No. 04-3905-SSC<br><br>MEMORANDUM DECISION RECONSIDERING, IN PART, THE COURT'S ORAL RULING ON THE RECORD.<br><br>(Opinion to Post) |
|---|---|

I. Preliminary Statement

On July 12, 2005, this Court conducted an evidentiary hearing on the Trustee's Application to Surcharge certain sale proceeds, with the remaining funds to be distributed to Bank of America, the secured creditor herein. Part of the difficulty that the Trustee and his counsel are experiencing is a lack of information from the Bank. For instance, the Bank of America presented no declaration or affidavit in support of its position, and called no witnesses at the evidentiary hearing. The extent of the evidence presented was the testimony of Dale D. Ulrich, the Chapter 7 Trustee. No exhibits were presented to the Court other than the initial affidavits of the Trustee and his counsel filed with the Surcharge Motion and the supplemental exhibits filed by said parties just prior to the hearing. There is no doubt that the Trustee and his counsel have substantially reduced the amount of their surcharge request. Moreover, at the hearing, counsel for Bank of America stated that the sum of $699.12 incurred by the Trustee and his counsel to keep the utilities on at the property could be surcharged against any proceeds that

the Bank of America would receive.  At the conclusion of the evidentiary hearing, the Court orally ruled in favor of the Trustee, granting the Application to Surcharge.  Subsequent to the hearing, the Court did have the opportunity to review the decision relied upon by counsel for the Bank of America in his closing argument.  The Court has also reviewed other Ninth Circuit precedent in determining that it should reconsider, at least in part, its oral ruling on the record and request additional evidentiary support from the Trustee.

II.  Factual Discussion

       The dispute arises out of the Trustee's sale of certain real property in Wood County, Texas.  The Trustee filed his first motion to sell this real property on June 29, 2004. Bank of America, which had a lien on the real property, filed a response not opposing the relief requested, provided that it was paid in full.  The sale did not proceed to closing, so the Trustee stipulated to a vacatur of the automatic stay as requested by the Bank in a separate motion.  The Stipulated Order was entered on August 18, 2004.[1]  The Trustee testified that around the time of the initial sale, he had received a payoff statement from Bank of America, which included a per diem amount.  Based upon that factual information, he then proceeded to market the property, believing that there was still an equity cushion.

       The Trustee then obtained a second offer on the property, and given the limited equity that the Trustee believed then remained on the property, the Trustee filed an Emergency Motion with the Court on October 21, 2004.[2]  The Trustee stated in the Emergency Motion that the Trustee had received another offer to purchase the real property in the amount of $140,000, that time was of the essence or the bankruptcy estate would receive little or no proceeds from the sale, that the real property needed to be sold on shortened notice to creditors, that the Trustee required that the 10-day stay under Bankruptcy Rule 6004 (g) be waived, and that Bank of America held a lien against the subject property in the amount of approximately $128,000.  The

---

**1**. *See* Docket Entry No. 41.

**2**. *See* Docket Entry No. 42.

Court executed an order shortening the time period requested by the Trustee to provide a bar date notice to creditors. If a creditor objected to the proposed sale, the Court would set a hearing thereon.[3] The Trustee then sent out a detailed notice to creditors, as permitted under the Local Rules of this Court. In the detailed Notice, the Trustee stated that the property would be sold for $140,000, that certain closing costs would be paid, including the broker's commission of 6 percent on the gross sales proceeds, and that the Bank of America lien was in the approximate amount of $128,000.[4] The Trustee then faxed the Notice to what he believed was the appropriate fax number for Bank of America. At the hearing on July 12, 2005, Counsel for Bank of America acknowledged that the number to which the Trustee faxed the Notice of the Emergency Motion was a fax number at Bank of America at the time. There is no indication in the record that Bank of America did not duly receive the faxed copy of the Notice. The Bank did not respond to this Notice. As a result, the Trustee filed a Certificate of No Objection with the Court on November 9, 2004.[5] On November 9, 2004, the Court approved the sale of the real property.[6] The Order provided that the real property was sold free and clear of liens, with the liens to attach to the proceeds, that the 10-day stay was waived under Bankruptcy Rule 6004 (g), and that the Order had become final for purposes of any appeal. Bank of America took no action with respect to this Order.

At the July 12, 2005 hearing, the Trustee testified that he then tried to contact counsel for the Bank so that he could obtain an updated payoff statement prior to the close of escrow. Counsel for the Bank stated that since the stay had been vacated by stipulation, he had closed his file on the matter and requested that the Trustee contact the Bank directly for the payoff amount. The Trustee stated that he made several attempts to contact the Bank, but was

---

[3]. *See* Docket Entry No. 44 as to the Court's Order dated October 28, 2004, shortening the time for creditors to object.

[4]. *See* Docket Entry No. 45, the Trustee's Notice dated October 29, 2004.

[5]. *See* Docket Entry No. 47.

[6]. *See* Docket Entry No. 48.

Case 2:04-bk-03905-SSC    Doc 66    Filed 08/10/05    Entered 08/11/05 08:51:30    Desc
Main Document    Page 3 of 7

unable to get any response.  The Trustee was also able to have the Debtor provide an additional $1,000 to the transaction, the buyer also agreed to increase the amount of his offer by $1,000, and the broker agreed to reduce his commission by $2,000.  After a pro-ration of the real property taxes, and the payment of the broker in the reduced amount, the escrow closing statement provided for the return of $130,963.75 to the bankruptcy estate, subject to the lien of Bank of America.[7]

Counsel for the Bank then assisted the Trustee in obtaining the payoff statement, apparently after the closing had already taken place.   That statement reflected that the Bank was owed the sum of $132,301.07 as of November 30, 2004.  Additional charges were included increasing the payoff amount to $134,671.75.[8]

At the July 12, 2005 hearing, the Trustee testified that although the payoff statement was attached to the Bank's Objection to the Trustee's Application for Surcharge, the Trustee could not, even as of the July 12 hearing, verify the amount requested by the Bank.

The Trustee testified that his practice, as a member of the United States Trustee's panel of trustees, was not to proceed with a sale of property of the estate if there was a undersecured creditor which had a lien on the property.  The Trustee stated that based upon a pay-off statement that he had received from the Bank of America, the Trustee believed the payoff amount was $121,110.18.

The Trustee testified that it was his belief that the property, if allowed to go into foreclosure, would have taken 6 months to a year to sell the property for the same amount of the Trustee's sale before this Court.  According to the Trustee, it was the best deal at the time, and the best deal for the foreseeable future.

---

**7.** *See* Exhibit A attached to the Trustee's current Application for Surcharge.

**8.** *See* the exhibit attached to the Bank's Objection to the Trustee's Application, filed on January 5, 2005, which is Docket Entry No.52.

III. Legal Discussion

At closing argument before this Court on the Surcharge Motion, Bank of America's counsel for the first time directed the Court to a Ninth Circuit decision entitled "In re Choo." Counsel did not have copy of the Decision with him at the time of argument, but did provide this Court and the Trustee's counsel with a citation. After the hearing, the Court reviewed the In re Choo Decision and other cases from the Ninth Circuit.

Pursuant to In re Choo 273 B.R. 608, 610 (9th Cir. BAP, 2002), "[g]enerally, bankruptcy administrative expenses may not be charged to or against secured collateral." However, §506(c) offers an exception to this rule when a trustee shows, "that the incurred expenses were (1) reasonable, (2) necessary, and (3) beneficial to a secured creditor." In re Debbie Reynolds Hotel & Casino, Inc., 238 B.R. 831, 837. Additionally, "[t]o satisfy the 'benefit' prong the claims must, establish in quantifiable terms that it expended funds directly to protect and preserve the collateral." Choo at 612; *see also* In re Compton Impressions, Ltd., 217 F.3d 1256, 1261 (9th Cir. 2000). To determine if the actions taken were proper, the necessity and reasonableness of the incurred expenses is measured against the "benefits obtained for the secured creditor and the amount that the secured creditor would have necessarily incurred through foreclosure and disposal of the property." Id. at 1260 (internal citations omitted).

There is little doubt to this Court that the expenses were reasonable and necessary. Counsel for Bank of America did not interpose any argument, nor submit any controverting evidence on these points. Moreover, this Court's independent review of these expenses, particularly in light of the reductions taken by both the Trustee and his counsel, reflects that the fees and expenses were reasonable and necessary. The Trustee took great pains to attain the amount of the payoff. He contacted the Creditor several times for the latest payoff amount. He based the amount of payoff in his sale motion off of the most recent payoff information from the creditor. To effectuate the sale the Trustee required $1,000.00 from the Debtor. He and his counsel worked in an efficient and prudent manner to maximize the net proceeds to be received by Bank of America and the bankruptcy estate from a sale of the property.

1    There is also little doubt that the Trustee's efforts were necessary to sell this
2    property. The Trustee's uncontroverted testimony was that when the initial sale of the property
3    could not proceed to closing, the Trustee stipulated to a vacatur of the automatic stay.  Yet Bank
4    of America did not immediately proceed to a non-judicial foreclosure sale of the property.  The
5    Trustee continued his efforts to provide a benefit to the estate and Bank of America by obtaining
6    a second offer for the property.  The Trustee then contacted the Bank on numerous occasions,
7    attempting to maximize the return to the Bank and the estate.  Prior to closing, the Trustee
8    continued to pay the utility expenses to protect and preserve the property for the estate and the
9    Bank.  The Court is convinced, based on the Trustee's uncontroverted testimony, that if the
10   property had not been sold pursuant to the Trustee's Emergency Sale Motion before this Court,
11   Bank of America would have eventually foreclosed.  As a result, there would have been
12   increased costs to the Bank associated with the foreclosure or trustee's sale, it would have taken
13   longer for the property to sell, and the property would have likely sold for the same amount or
14   less.  It should also be emphasized that Bank of America never objected to the second sale before
15   the Court and never appealed the Order of this Court allowing the sale.
16           However, the Court is bound by Choo, which requires that the Trustee, who is
17   seeking to surcharge the net proceeds from the sale of the property, has the burden of proof to
18   show a quantifiable benefit to Bank of America.  In reviewing the evidence presented by the
19   Trustee, the Court is unable to "quantify" the benefit.  The Trustee has presented no evidence
20   which numerically shows the Court by how much the Bank benefitted.  While the Court has little
21   doubt that the Bank did benefit from the Trustee's actions, it cannot, at this time, quantify the
22   amount of the benefit.
23           Accordingly, the Court needs additional evidence from the Trustee quantifying
24   the benefit to the Bank provided by the Trustee.  Once the additional evidence is received and
25   reviewed, the Court will render a final ruling.
26
27   IV.  Conclusion
28           Based on the foregoing, the Court orders the Trustee to provide additional

1  evidence, through a declaration or affidavit, concerning the quantifiable benefit to the Bank of
2  America within 14 days of the date of this Decision. Bank of America will have an opportunity
3  to submit a declaration or affidavit controverting such a benefit analysis within 30 days of the
4  date of this Decision.  If necessary, the Court will set an evidentiary hearing in this matter.  Once
5  the Court has considered the additional evidence, it will enter a final ruling on the remaining
6  issue on the Application to Surcharge.

**DATED this 10th day of August, 2005.**

_____
**Honorable Sarah Sharer Curley
Chief U. S. Bankruptcy Judge**